UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

SHETIKA FLAKE,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )      No. 3:25-cv-00257-MPB-CSW
                                        )
TOWN & COUNTRY FORD, INC.,              )
                                        )
                    Defendant.          )

**ORDER GRANTING MOTION TO COMPEL
ARBITRATION AND STAYING PROCEEDINGS**

This matter is before the Court pursuant to an Entry Referring Motion to the Magistrate Judge.  For the following reasons, the Court **GRANTS** Defendant's *Motion to Compel Arbitration and Stay Proceedings*.  (Dkt. 29).

## I.    BACKGROUND

This case concerns an employment dispute between Plaintiff Flake and her former employer, Defendant Town & Country Ford ("Town & Country").  (Dkt. 30 at 1-2).  Plaintiff Flake, an African American woman, worked for Town & Country for three months.  (Dkt. 31 at 1).  As part of her onboarding paperwork, Plaintiff signed an Applicant Notice Dispute Resolution Program Agreement ("Agreement").  (Dkt. 30 at 2).

The Agreement included an acknowledgement that, in the event of a dispute, Plaintiff would submit to "mandatory and binding arbitration."  The Agreement provided:

> By my submission of this application to you for employment, I understand that any legal dispute related to this application for employment or any legal dispute during any subsequent employment with the Company will be conducted under its Dispute Resolution Program. The Dispute Resolution Program is a multi-step process, which requires that I provide notice to the Company of any issue regarding this application for

-1-

employment or any subsequent employment. I understand that the last and final step under the Dispute Resolution Program is a requirement of mandatory and binding arbitration, which will be conducted under the American Arbitration Association's "Employment Arbitration Rules and Mediation Procedures." The types of claims covered under the program are all legal claims, including: claims for wages or other compensation; claims for breach of any contract, covenant or warranty (expressed or implied); tort claims (including, but not limited to, claims for physical, mental or psychological injury, without regard to whether such injury was sustained in the course and scope of employment); claims for wrongful termination; discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, sexual orientation, medical condition or disability whether under federal, state or local law) . . . ; and claims for a violation of any other non-criminal federal, state or other government law, statute, regulation or ordinance. I agree, in consideration of the Company's consideration of my application of employment or any subsequent employment of me by the Company, that I will follow the Company's Dispute Resolution process, which includes mandatory binding arbitration.

(*Id.*).

Plaintiff filed suit in this Court on November 26, 2025, alleging racial and sex-based discrimination, hostile work environment, and retaliation. (*Id.* at 3). On May 19, 2026, Town & Country sent a letter to Plaintiff's attorney requesting to submit Plaintiff's claims to arbitration. Following a status conference on June 1, 2026, Town & Country shared a copy of the Agreement signed by Plaintiff with Plaintiff's counsel. The Parties filed a Joint Notice to the Court on June 12, 2026, stating that the Parties could not agree on the arbitrability of this case, and Town & Country informed that Defendant would file a Motion to Compel Arbitration.

Town & Country filed its *Motion to Compel Arbitration and Stay Proceedings* and *Memorandum of Law* on June 26, 2026. (Dkts. 29, 30). Plaintiff filed her *Memorandum of Law in Opposition* on July 15, 2026. (Dkt. 31). Town & Country filed its *Reply in Support* on July 22, 2026. (Dkt. 32). Therefore, the matter is ripe.

## II.    LEGAL STANDARD

In 1925, Congress enacted the Federal Arbitration Act ("FAA") in response to "widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013).  Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Thus, arbitration is a matter of contract.  *Am. Exp.*, 570 U.S. at 233. Consistent with this principle, courts must place arbitration agreements "on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).  A party moving to compel arbitration must show (1) a valid agreement to arbitrate, (2) that the dispute is within the scope of arbitration, and (3) that the opposing party refuses to proceed to arbitration.  *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). Arbitration can only be compelled when the court is "satisfied that the parties agreed to arbitrate that dispute."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *see also United Nat. Foods, Inc. v. Teamsters Loc. 414*, 58 F.4th 927, 933 (7th Cir. 2023).

Whether a valid arbitration agreement exists is a matter of state contract law.  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).  Under Indiana law, an arbitration agreement — like any enforceable contract — requires an offer, acceptance, and consideration.  *Land v. IU Credit Union*, 218 N.E.3d 1282, 1287 (Ind. 2023).  If the movant establishes there is a valid arbitration agreement, the FAA provides a strong presumption that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotations omitted).  Any doubt concerning the arbitration "should be resolved in favor of coverage."  *Id.*

-3-

A motion to compel arbitration is decided according to the standard used to resolve summary judgment motions pursuant to Fed. R. Civ. P. 56. *Tinder*, 305 F.3d at 735. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

### III.   DISCUSSION

Town & Country argues there is a valid agreement to arbitrate, the claims advanced by Plaintiff fall within the scope of arbitration, and that despite the agreement, Plaintiff refuses to proceed to arbitration. (Dkt. 30 at 5). Town & Country further contends that no discovery has occurred and no dispositive motions have been filed, and therefore, ordering the case to arbitration at this juncture is appropriate. (*Id.* at 8). Town & Country notes Plaintiff "has not expended any resources engaging in discovery, responding to, filing, or developing dispositive motions or arguments, or otherwise extensively engaging in litigation in this case." (*Id.*). In other words, Town & Country argues it has not waived its right to force this dispute to arbitration, and no prejudice would result to Plaintiff.

In response, Plaintiff contends that no valid arbitration agreement exists. (Dkt. 31 at 7). Plaintiff explains the Agreement is a "one-page form printed on the letterhead of a different corporation," – Hays Automotive Supervision, Inc., – and asserts that Town & Country is not named on the document. (*Id.*, Dkt. 32-1). Additionally, Plaintiff argues Town & Country waived its right to enforce the Agreement after litigating this action for approximately six months. (Dkt. 31 at 2).

Plaintiff also contends Town & Country acted inconsistently with an intent to arbitrate by answering Plaintiff's Complaint, negotiating a case management plan which included a request for a jury trial, serving initial disclosures, appearing at a status conference, filing a preliminary witness and exhibit list, and answering Plaintiff's settlement demand. (*Id.* at 5).

-4-

In reply, Town & Country claims it has a binding arbitration agreement with Plaintiff. (Dkt. 32 at 9). Town & Country explains, "[w]hile the page shared with Plaintiff and cited as Exhibit 1 in Town & Country's opening Memorandum of Law includes 'Hays Automotive Supervision, Inc.' on the letterhead, Plaintiff also signed an 'Employee Dispute Resolution & Arbitration Program Notice to All Applicants' in which 'Town & Country Ford, Inc.' is listed on the letterhead. Ex. 3 (Notice)." (*Id.*). Town & Country further argues that the Notice "has identical language to Exhibit 1 to Town & Country's opening Memorandum of Law." (*Id.*).

Town & Country also claims it acted consistently with the right to arbitrate. (Dkt. 32 at 4). Town & Country notes it diligently asserted arbitration following the breakdown in settlement discussions. (*Id.* at 3). Town & Country further notes that it "does not contest that it 'knew it had an arbitration agreement the day it was served,'" and claims that knowledge alone does not trigger an immediate duty to move for arbitration while settlement remains possible. (*Id.* at 3-4).

### A. VALIDITY OF THE ARBITRATION AGREEMENT

Here, a valid arbitration agreement exists. Whether a valid arbitration agreement exists is a matter of state contract law. *Tinder*, 305 F.3d at 733. "An agreement to arbitrate must be in writing and evince an intention to resolve some controversy through arbitration." *Novotny v. Renewal by Andersen Corp.*, 861 N.E.2d 15, 22 (Ind. Ct. App. 2007). As with all contract interpretation, courts give the language of the arbitration agreement "its plain and ordinary meaning." *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1241–42 (Ind. Ct. App. 2010). To "determine the intent of the parties at the time the contract was made," a court should examine "the language used to express their rights and duties." *Id.* When construing an arbitration agreement, "every doubt is to be resolved in favor of arbitration." *Id.*

While Plaintiff argues the Agreement is printed on the letterhead of a different corporation than the named Town & Country (Dkt. 32-1), Town & Country also provided evidence of Plaintiff's signature on an "Employee Dispute Resolution

& Arbitration Program Notice to All Applicants" where the named Defendant, Town & Country, is indeed listed on the letterhead. (Dkt. 32-3). Thus, the argument that the named Town & Country is not the party to the contract is inaccurate.

Having reviewed both Exhibits, the Court finds the language in Exhibit 1 and Exhibit 3 regarding the arbitration provisions are nearly identical. The signed Agreement in Exhibit 1 provides that Plaintiff, "in consideration of the Company's consideration of my application of employment or any subsequent employment of me by the Company, that I will follow the Company's Dispute Resolution process, which includes mandatory binding arbitration." (Dkt. 32-1). Similarly, the signed agreement in Exhibit 3 provides that Plaintiff agrees:

> to the terms and conditions of the Company's Employee Dispute Resolution Program ("EDR"). The EDR is a multi-step process that requires you provide notice to the Company of any and all issues related to this application for employment, any subsequent employment and any cessation of employment. The final step of the EDR is mandatory and binding arbitration . . . the exclusive procedure to resolve any such disputes shall be through the Company's EDR; and that you are relinquishing the right to file a civil suit based on any and all claims, disputes, or controversies arising out of or related to this application, as well as any subsequent employment or cessation of employment by the Company.

(Dkt. 32-3). There is no ambiguity in this language, nor from what company Plaintiff sought employment.

The Arbitration Clauses in Exhibits 1 and 3 are written broadly to encompass all disputes and explicitly contain the Parties' agreement to submit all disputes related to the Contract to arbitration. Therefore, the Arbitration Clause is valid.

### B. WAIVER

Even if the Arbitration Clause is valid, a party can waive its intent to proceed to arbitration. Plaintiff argues Town & Country has done so here.

There is a "strong federal policy" in favor of arbitration. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992). As such, parties asserting waiver of a right to arbitrate "bear a 'heavy burden' and

courts should not 'lightly infer' waiver." *Id*.  Importantly, "[n]o rigid rule exists as to what constitutes a waiver of the right to arbitrate.  Instead, the issue depends on the circumstances of each particular case." *Id*. at 588.

To establish waiver, a party must show that the party seeking arbitration "acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).  To analyze whether a party has waived its right to arbitrate, several factors are weighed including "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id*. The Court attributes more weight to the "diligence or the lack thereof of the party seeking arbitration," and considers whether the party did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry*, Inc., 50 F.3d 388, 391 (7th Cir. 1995).

Plaintiff claims Town & Country's actions of answering Plaintiff's Complaint; negotiating a case management plan, which included a request for a jury trial; serving initial disclosures; appearing at a status conference; filing a preliminary witness and exhibit list; and answering Plaintiff's settlement demand are all inconsistent with the Town & County's stated intent to arbitrate.  (Dkt. 31 at 5). While the Court shares Plaintiff's concern as to why the Arbitration Clause was not flagged at the initial pretrial conference or in counsel's Rule 16 conference, the analysis for waiver requires a more searching inquiry.

To compare, an instance where our Circuit held that a party waived its right to pursue a matter in arbitration is instructive.  In *Cabinetree*, the Court found a party waived the right to pursue the matter in arbitration when it filed a lawsuit, litigated for nine months, and propounded discovery requests requiring the other party to produce nearly two-thousand documents before suddenly seeking to compel arbitration.  *Cabinetree* at 389.  The instant case is distinguishable.  Town & Country has not filed any motions regarding the merits of the claims, and written discovery has not progressed to production on behalf of either party.

A total of six months have elapsed since the Plaintiff filed her Complaint; however, the Parties were engaged in settlement discussions during at least a portion of that time. *See* (Dkts. 30 at 3; 31 at 4). As the Seventh Circuit has already held, [p]reliminary negotiations concerning a settlement are not sufficient to waive arbitration." *Dickinson v. Heinold Sec., Inc.,* 661 F.2d 638, 641 (7th Cir. 1981). The Court explained that "[s]ignificant periods of delay prior to the onset of litigation are often necessary to allow the parties to engage in good faith efforts to resolve the controversy without reference to an adjudicatory body." *Id.* Taking this as guidance from the Seventh Circuit, then, Town & Country's efforts focusing on potential early resolution do not equate to waiver and are thus, not fatal to its right to invoke the arbitration provision.

Town & Country's actions of filing an answer, serving initial disclosures, and filing a preliminary witness and exhibit list also do equate to a waiver, as held by other courts in this circuit. *See Hernandez v. Compass Grp./Touchpoint*, No. 23-CV-16736, 2025 WL 2257376, at *2 (N.D. Ill. Aug. 7, 2025) (finding that neither filing of an answer nor the exchange of initial disclosures resulted in waiver and explaining that the defendant's delayed request for arbitration was attributable to its good-faith attempt at settling the case); *see also 4 Zone 180 LLC v. Jones*, No. 2:24-CV-452-GSL-JEM, 2026 WL 835760, at *3 (N.D. Ind. Mar. 25, 2026) ("Seventh Circuit courts have routinely held that 'participating in preliminary stages of litigation, alone, is not sufficient to waive the defendants' right to arbitrate this dispute.'").

Further, Town & Country's participation in case management procedures do not demonstrate waiver. (Dkt. 30 at 6). "Acting as required under applicable rules is not waiver of the right to arbitrate." *Honomichl v. Integrated Int'l Payroll Ltd.*, No. 09-CV-7218, 2010 WL 2025395, at *7 (N.D. Ill. May 21, 2010).

Indeed, the Southern District of Indiana's Local Rules require parties to "confer, prepare, and file a joint case management plan within 90 days after the case was either filed or removed to the court; and according to the instructions and form available on the court's website." S.D. Ind. L.R. 16-1(c). Town & Country

notes that it did not request that a jury be empaneled. (Dkt. 32 at 6).  Rather, Plaintiff selected a jury demand on the Court's form Case Management Plan. (*Id*.)

Parties are reminded that the Case Management Plan, which is the subject of the initial pretrial conference should be a joint effort and reflect both agreements and disputes for discussion.  While a binding arbitration clause should certainly be raised by counsel as early as possible, and ideally in advance of the initial pretrial conference, Town & Country's actions in complying with the local rules here do not equate to an automatic waiver of the parties' binding agreement to arbitrate their disputes.

Additionally, Plaintiff contends Town & Country's appearance at a status conference further undermines any intent to arbitrate.  This argument fails for the same reasons.  Responsive conduct, including "appearing at hearings scheduled by the Court" does not result in waiver.  *See Skyline Restoration, Inc. v. First Baptist Church*, No. 17-C-1234, 2017 WL 6570077, at *2 (N.D. Ill. Dec. 21, 2017).

While six months have elapsed since the filing of the case, and it is unfortunate that arbitration was not the premier focus of the parties' attention in the case management planning stage, early settlement discussions often result in resolution of cases short of motions practice or submission to arbitration.  Those efforts should not be faulted.  As such, the undersigned Magistrate Judge cannot find that Town & Country indicated an intent to waive its right to resolve this dispute by binding arbitration or that Plaintiff is prejudiced by enforcement of the binding Arbitration Agreement.

## IV.   CONCLUSION

For the foregoing reasons, Town & Country's *Motion to Compel Arbitration and Stay Proceedings* (Dkt. 29) is **GRANTED.**  If Plaintiff intends to pursue her claims, she must proceed as set forth in the Arbitration Agreement.

Town & Country has requested a stay of this civil action to proceed to arbitration.  Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court "shall on

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright.").

**IT IS THERFORE ORDERED** that all proceedings in this action are hereby **STAYED until further order of the Court.** Town & Country is **ORDERED** to file a status report **on or before August 31, 2026**, indicating whether Plaintiff has initiated arbitration.

If arbitration is not pursued by August 31, 2026, the undersigned Magistrate Judge will recommend to the District Court Judge that this action be dismissed with prejudice. If arbitration of this dispute is pursued, Town & Country is ordered to file reports on the status of the arbitration **every sixty (60) days** from the date of the first status report.

**SO ORDERED.**

Date: July 27, 2026

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

**Distribution:** Distributed electronically via ECF to counsel of record.

-10-